UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United Sugars Corporation,

             Plaintiff,

v.

Tropical Worldwide Corp., Commercial
Long Trading, and United Packaging
Corp.,

             Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 13-2718 ADM/JJG

___

Jeffrey Bouslog, Esq., Marie L. van Uitert, Esq., Oppenheimer Wolff & Donnelly LLP, Minneapolis, MN, on behalf of Plaintiff.

Laura N. Maupin, Esq., and Emily Grande Stearns, Esq., Barnes & Thornburg LLP, Minneapolis, MN, on behalf of Defendants.

___

## I. INTRODUCTION

On February 11, 2014, the undersigned United States District Judge heard oral argument on Defendants Tropical Worldwide Corp. ("Tropical Worldwide"), Commercial Long Trading, and United Packaging Corp.'s ("United Packaging") (collectively, "Defendants") Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative for Improper Venue [Docket No. 19]; Defendants' Motion to Set Aside Default [Docket No. 25]; and Plaintiff United Sugars Corporation's ("United Sugars") Motion for Default Judgment [Docket No. 13]. For the reasons stated herein, Defendants' motion to dismiss is granted, Defendants' motion to set aside default is denied as moot, and United Sugars' motion for default judgment is denied as moot.

## II. BACKGROUND

United Sugars is a Minnesota company that sells sugar and has its headquarters in Bloomington, Minnesota. Compl. [Docket No. 1] ¶¶ 1, 8; Decl. of Gary J. Staples ("Staples

Decl.") [Docket No. 34] ¶ 1. Defendants are all Florida companies owned and operated by Florida residents Elliot Giraud, Sr. and his son Ommar Giraud. Compl. ¶¶ 2-4, 9. Tropical Worldwide is a merchant wholesaler of grocery and related products and packager of food products. Decl. of Ommar Giraud ("Giraud Decl.") [Docket No. 22] ¶ 3. Commercial Long Trading is in the real estate business. Id. United Packaging is a packager of food products. Id. Defendants operate out of facilities located in Miami, Florida (the "Miami Facilities"), do not maintain an office or advertise in Minnesota, and have never sent employees to Minnesota to conduct business. Compl. ¶ 11; Giraud Decl. ¶¶ 31-33, 35.

Defendants have a longstanding business relationship with United Sugars that began in the early 1990s. Giraud Decl. ¶ 18. For over fifteen years, Defendants have purchased large amounts of sugar from United Sugars for resale to grocery stores and wholesalers, and in 2009 Tropical Worldwide began co-packing sugar for United Sugars at Defendants' Miami Facilities. Id. ¶ 18; Compl. ¶¶ 7-8. According to Defendants' president, Ommar Giraud, United Sugars is Tropical Worldwide's largest client, and Defendants' business relationship with United Sugars is important to the success of Defendants' businesses. Giraud Decl. ¶¶ 17-18.

During the course of the parties' business relationship, United Sugars and Defendants have entered into multiple contracts. Staples Decl. ¶ 2. These contracts identify United Sugars as a Minnesota corporation and include a choice of law and venue provision stating that actions relating to the breach, construction, or enforcement of the contract will be governed by Minnesota law and will be brought in a Minnesota court. See, e.g., id. Exs. A, B. Since at least 2003, Giraud and his employees have regularly contacted United Sugars at its Minnesota headquarters through telephone, mail, and email with respect to the parties' agreements and

business transactions.  Staples Decl. ¶ 3.

This action stems from an August 1, 2009 agreement between United Sugars and Tropical Worldwide titled "Proposed Co-Pack Agreement" (the "Co-Pack Agreement").  Aff. of John Doxsie [Docket No. 17] Ex. A.  Under the Co-Pack Agreement, Tropical Worldwide agreed to package fine granulated sugar (the "Product") for United Sugars.  Compl. ¶ 7.  United Sugars alleges that because Tropical Worldwide is the alter ego of Commercial Long Trading and United Packaging, all Defendants are liable under the Co-Pack Agreement.  Id. ¶¶ 7, 31-32.

As with the parties' other contracts, the Co-Pack Agreement identifies United Sugars as a Minnesota company and includes a Minnesota choice of law provision and Minnesota forum selection clause.  Id. ¶ 15.  The forum selection clause provides:

> The parties hereto herewith submit to the jurisdiction of the District Court, Seventh Judicial District, Clay County, Minnesota, and agree that forum is the proper venue and forum for adjudication of all disputes between the parties with respect to the transactions contemplated or arising out of this Agreement or the construction, interpretation, or enforcement of this Agreement.

Co-Pack Agreement ¶ 25.

The Co-Pack Agreement also provides that Defendants will bear the risk of loss or damage to the Product that occurs before the delivery of such Product to United Sugars or to the transportation carrier delivering the Product, and requires Defendants to notify United Sugars of any destruction, damage, or loss to the Product.  Compl. ¶¶ 12-13.

From 2009 to approximately June 2012, United Sugars shipped Product to Defendants' Miami Facilities, where Defendants packaged the Product and shipped it to United Sugars' customers.  Compl. ¶ 8.  Defendants sent co-packing invoices for the services they performed to United Sugars' Packaging Department located in Moorhead, Minnesota.  Decl. of Raymond

Smith ("Smith Decl.") [Docket No. 35] ¶ 5.  Defendants negotiated rate changes and additional services to the Co-Pack Agreement by communicating via phone, email, and text message with United Sugars' employees located in Bloomington, Minnesota.  Id. ¶ 4.

In November 2011, approximately $636,000 worth of Product disappeared from Defendants' Miami Facilities.  Compl. ¶ 16.  Defendants told United Sugars that the Product had been damaged or destroyed by a windstorm that caused the collapse of four silos in which the Product was stored.  Id.  Giraud filed an insurance claim under Commercial Long's insurance policy for the loss.  Decl. of Paul Wengronowitz ("Wengronowitz Decl.") [Docket No. 33] ¶ 6.

According to a declaration filed by Giraud in this case, after the silo collapse United Sugars realized that, although it had provided Tropical Worldwide with a copy of the Co-Pack Agreement, "neither side [had] got[ten] around to signing it."  Giraud Decl. ¶¶ 13, 15-16.  Giraud states that Paul Wengronowitz from United Sugars traveled to Miami in January 2012 and told Giraud that if he did not sign and backdate the Co-Pack Agreement, United Sugars would stop doing business with his companies.  Id. ¶ 16.  Giraud avers that he felt he had no choice but to sign the Co-Pack Agreement, regardless of its terms, because the relationship with United Sugars was "so important to the success of [his] businesses."  Id. ¶ 18.  Wengronowitz has filed a declaration refuting Giraud's allegations and stating that he had no communications with Giraud at any time regarding the negotiation or execution of the Co-Pack Agreement.  Wengronowitz Decl. ¶ 4.

In June 2012, United Sugars visited the Defendants' Miami Facilities to verify its Product inventory, and learned that an additional $708,000 of its Product was missing.  Compl. ¶ 23.  Defendants informed United Sugars that the $708,000 in missing product had been stolen by

a former employee of Defendants in May 2012.  Id. ¶ 24.  Defendants have repeatedly promised to pay United Sugars $708,000 for the Product losses, but have not done so.  Id. ¶¶ 20-21, 25-26.

On October 2, 2013, United Sugars filed this action alleging breach of the Co-Pack Agreement, unjust enrichment, and promissory estoppel.  See generally Compl.  Defendants did not answer or appear within the time allowed to answer the Complaint, and the Clerk entered a default on November 1, 2013.  Clerk's Entry of Default [Docket No. 9].  Defendants acknowledge the Complaint was properly filed and served on October 4, 2013, but aver they inadvertently missed the deadline to answer because Giraud was in New York City on a business trip at the time the Complaint was served.  Mem. Supp. Mot. Set Aside Default J. [Docket No. 27] at 8, n.2; Giraud Decl. ¶¶ 26, 27.  Giraud alleges that following his return to Florida on October 16, 2013, it was not until November 7, 2013 that he discovered the Summons and Complaint.  Giraud Decl. ¶¶ 28-29.

Upon discovering the Complaint, Giraud immediately contacted his attorney in Miami, Florida, and signed an engagement letter with Minnesota counsel the following week.  Id. ¶¶ 29-30.  Defendants' counsel then emailed opposing counsel to inform them Defendants would be filing a motion to set aside entry of the default.  Id. ¶ 30.  Counsel for United Sugars replied that United Sugars intended to file a motion for default judgment unless Defendants could explain the reason for Defendants' default and their planned defenses.  Defendants' counsel declined to provide this information.  See Decl. of Marie L. van Uitert [Docket No. 16] Ex. D.

Defendants now move to dismiss for lack of personal jurisdiction or, in the alternative, for improper venue.  United Sugars moves for default judgment and requests that, should the Court deny the motion, Defendants be ordered to pay United Sugars attorney's fees that were

5

needlessly incurred due to Defendants' refusal to provide the factual bases for its motion to set aside the default.

### III.  DISCUSSION

**A.  Motion to Dismiss**

    **1.  Personal Jurisdiction**

"To survive a motion to dismiss for lack of personal jurisdiction a plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 561 (8th Cir. 2003) (citing Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996)).  In determining whether a prima facie showing has been made, "the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. Digi-Tel, 89 F.3d at 522.

Defendants argue the forum selection clause of the Co-Pack Agreement, in which the parties consented to jurisdiction in Minnesota, is unconscionable and unenforceable because Defendants were forced to sign and backdate the Co-Pack Agreement.  Therefore, Defendants argue, the Court may not exercise personal jurisdiction over them absent their consent, because the requirements of due process have not been satisfied.  United Sugars denies the Co-Pack Agreement was backdated, and argues that even if the Agreement were unenforceable, the Court may exercise personal jurisdiction over Defendants based on their ongoing and systematic contacts with Minnesota.

With respect to the enforceability of the forum selection clause in the Co-Pack Agreement, a factual dispute exists as to whether the Co-Pack Agreement was backdated.  For the purposes of this motion, the Court must resolve this factual conflict in United Sugars' favor,

as Defendants are the moving party. Thus, Defendants have made a prima facie showing that the forum selection clause under which Defendants consented to jurisdiction in Minnesota is enforceable.

Even if the Co-Pack Agreement were not enforceable, the Court can exercise jurisdiction over Defendants if (1) the requirements of Minnesota's long-arm statute are satisfied; and (2) due process is not violated. St. Jude Med., Inc. v. Lifecare Int'l, Inc., 250 F.3d 587, 591 (8th Cir. 2001). Because Minnesota's long-arm statute is "coextensive with the limits of due process," the only question is whether the exercise of personal jurisdiction comports with due process. Minn. Mining & Mfg. Co. v. Nippon Carbide Indus., Co., 63 F.3d 694, 697 (8th Cir. 1995).

Due process requires that a defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (internal quotations omitted). "Sufficient contacts exist when 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Digi-Tel, 89 F.3d at 522 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

The Eighth Circuit applies a five-factor test to determine whether the constitutional due process requirements for exercising personal jurisdiction are satisfied: "(1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties." Pecoraro, 340 F.3d at 562. The first three factors are of primary importance, while the last two are "secondary factors." Minn.

Mining, 63 F.3d at 697.  The third factor distinguishes between specific and general jurisdiction. Digi-Tel, 89 F.3d at 523 n.4.  "Specific jurisdiction can only be found if the controversy is related to or arises out of the defendant's contacts with the forum state." Johnson v. Woodcock, 444 F.3d 953, 956 (8th Cir. 2006) (quotation omitted).  By contrast, general jurisdiction requires a showing that the defendant's contacts with the forum state are "continuous and systematic even if there is no relationship between the contacts and the cause of action." Id. (quotation omitted).

      An analysis of the first two factors—the quality and quantity of Defendants' contacts—shows Defendants' contacts with this forum are sufficient to subject Defendants to personal jurisdiction in Minnesota.  Defendants have engaged in a significant and ongoing fifteen-year business relationship with United Sugars, a Minnesota corporation.  The relationship is so important to Defendants that their success depends upon it.  Defendants have purposefully directed their activities at this forum by: entering into multiple contracts with Minnesota resident United Sugars; selling packaging services to United Sugars; sending invoices and payments for the parties' business transactions to Minnesota; negotiating contract terms and rates changes with personnel located at Minnesota headquarters; and regularly directing phone calls, emails, and text messages to United Sugars' employees in Minnesota.  The ongoing relationship and regular communications with United Sugars in Minnesota "are not random, fortuitous or attenuated contacts . . . but rather a purposeful connection that should have put [Defendants] on notice that they could be haled into court in Minnesota." St. Jude Med., 250 F.3d at 592 (holding personal jurisdiction established where defendants had long-term, ongoing business relationships); see also Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1433 (8th Cir. 1995) (finding mail and telephone contacts to be "evidence of a continuous,

systematic business relationship").

In addition, Defendants' numerous contracts with United Sugars include Minnesota choice of law and venue clauses. These clauses are relevant to determining whether Defendants purposely invoked the benefits and protections of Minnesota's laws, and are significant when combined with other factors supporting personal jurisdiction. Wessels, 65 F.3d at 1434; Land O'Lakes, Inc. v. Barry, Civ. No. 13-1401, 2013 WL 5487623, at *5 (D. Minn. Oct. 1, 2013).

Defendants' lack of physical presence in Minnesota does not defeat the exercise of personal jurisdiction over them. As the Supreme Court recognizes,

> it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).

The third factor, the relationship between the cause of action and the contacts, establishes the exercise of specific jurisdiction because the claims are based on the Defendants' business relationship—specifically, the co-packing arrangement—with Minnesota-based United Sugars. Defendants argue the co-packing relationship was initiated by United Sugars, who solicited packaging services from Tropical Worldwide, and thus Defendants did not purposefully direct their activities to residents of the Minnesota forum. The Eighth Circuit has rejected similar arguments where, as here, a defendant could have declined the business opportunity, but instead chose to pursue it. See Wessels, 65 F.3d at 1433 (finding relevant contacts where a non-resident defendant "could have declined [the Minnesota plaintiff's] solicitation, but instead actively

pursued a business relationship.").

The last two factors—Minnesota's interest in providing a forum for its residents, and the convenience of parties—also warrant the exercise of jurisdiction. "Minnesota has an undeniable interest in providing its residents with a forum." Kroll Ontrack, Inc. v. Jacobowitz and Gubits, LLP, Civ. No. 09-3595, 2010 WL 1485916, at *3 (D. Minn. Apr. 12, 2010) (quoting Aero Sys. Eng'g, Inc. v. Opron, Inc., 21 F. Supp. 2d 990, 998 (D. Minn. 1998)). Additionally, Defendants have not shown they will be substantially burdened by defending the underlying action in Minnesota. See Burger King, 471 U.S. at 474 ("[B]ecause modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.") (internal quotations omitted). Therefore, the Court may exercise personal jurisdiction over Defendants.[1]

---

[1] The Court's personal jurisdiction extends to all Defendants because United Sugars has alleged that Defendants Commercial Long and United Packaging are alter egos of Tropical Worldwide. See Compl. ¶ 7. Where a corporation is operated as a mere alter ego of another, personal jurisdiction over one corporation will support jurisdiction over the other. Lakota Girl Scout Council, Inc. v. Harvey Fund-Raising Mgmt., Inc., 519 F.2d 634, 637-38 (8th Cir. 1975) (holding where a corporation is the alter ego of the stockholders so as to justify disregard of the corporate entity, jurisdiction over the corporation will support jurisdiction over the stockholders); Scott v. Mego Int'l, Inc., 519 F. Supp. 1118, 1126 (D. Minn. 1981) (finding a company may subject itself to jurisdiction by virtue of its affiliated company's activities if the companies are "organized and operated so that the one corporation is an instrumentality or adjunct of the other corporation."). In addition to the allegations in the Complaint, United Sugars has produced evidence suggesting Tropical Worldwide acted as the instrumentality for United Packaging and Commercial Long Trading. See Staples Decl. ¶ 4 (stating Defendants' president referred to Tropical Worldwide and United Packaging interchangeably); Wengronowitz Decl. ¶ 6 (stating Commercial Long Trading filed insurance claim for loss related to Tropical Worldwide's co-packing arrangement with United Sugars).

**2. Venue**

Defendants alternatively move for dismissal under Federal Rules of Civil Procedure 12(b)(6) based on the forum-selection clause of the Co-Pack Agreement.[2] Defendants argue the forum-selection clause requires this case to be brought in state district court in Clay County, Minnesota. United Sugars argues the forum-selection clause is merely permissive, rather than mandatory.

The Supreme Court has repeatedly recognized that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional circumstances." Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., — U.S. —, 134 S.Ct. 568, 581 (2013) (alteration in original) (quoting Stewart Org., Inc., v. Ricoh Corp., 487 U.S. 22, 32 (1988) ); see also Union Elec. Co. v. Energy Ins. Mut. Ltd., 689 F.3d 968, 973 (8th Cir. 2012) ("Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching.") (quoting M.B. Rests., Inc. v. CKE Rests., Inc., 183 F.3d 750, 752 (8th Cir. 1999)).[3]

Federal courts distinguish between mandatory and permissive forum selection clauses. McDonnell Douglas Corp. v. Islamic Republic of Iran, 758 F.2d 341, 346-47 (8th Cir. 1985).

---

[2] Defendants also moved to dismiss under Rule 12(b)(3), but requested at the hearing that the Court consider only its Rule 12(b)(6) argument. The Supreme Court recently stated that the appropriate mechanism for enforcing a state forum selection clause is the doctrine of forum non conveniens, rather than Rule 12(b)(3). Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., — U.S. —, 134 S.Ct. 568, 580 (2013). However, the Court has not ruled out the use of Rule 12(b)(6) to achieve this purpose. Id.; see also Union Elec. Co. v. Energy Ins. Mut. Ltd., 689 F.3d 968, 971 (8th Cir. 2012) (stating Rule 12 an appropriate vehicle for enforcing a forum selection clause);

[3] In arguing the issue of whether the forum selection clause warrants dismissal, no party challenges the clause's validity.

Mandatory selection clauses use specific language such as "exclusive," "sole," or "only" to clearly designate a forum, whereas permissive clauses merely provide consent to jurisdiction and venue, but do not require a specific forum. Fl. State Bd. of Admin. v. Law Eng'g and Envtl. Servs., Inc., 262 F. Supp. 2d 1004, 1009-10 (D. Minn. 2003). Courts uniformly hold that when a forum selection clause specifies a forum as "the" forum for jurisdiction or venue, rather than "a" forum, the use of the definite article "the" signifies a mandatory forum-selection clause. See, e.g., Top Branch Tree Serv. & Landscaping v. Omni Pinnacle, LLC, Civ. No. 06-3723, 2007 WL 1234976, at *2 (E.D. La. Apr. 26, 2007) ("[I]f the 22nd Judicial District Court is a court of original jurisdiction, the jurisdiction of other courts is not necessarily excluded. However, if the 22nd Judicial District is the court of original jurisdiction, no other court is also a court of original jurisdiction."); Apotex Corp. v. Istituto Biologico Chemioterapico s.p.a., No. 02 C 5345, 2003 WL 21780965, at *6 (N.D. Ill. July 30, 2003) ("To accept Apotex's argument that the language in the clause does not mean that a Torino forum is mandatory would be to ignore the definite article used in the clause, and substitute the word 'a' for the word 'the.'"); P.M. Enters. v. Color Works, Inc., 946 F. Supp. 435, 440 (S.D. W. Va. 1996) ("[T]he contract language at issue reveals that [the forum-selection provision] conclusively selects Lauderdale County, Alabama, as 'the proper venue' for resolution of contract disputes. Use of the definite article 'the' signifies venue is proper nowhere else; any other interpretation of the provision would render it meaningless.").

The forum-selection clause in the Co-Pack Agreement states:

> The parties hereto herewith submit to the jurisdiction of the District Court, Seventh Judicial District, Clay County, Minnesota, and agree that forum is the proper venue and forum for adjudication of all disputes between the parties with respect to the transactions

12

>contemplated or arising out of this Agreement or the construction, interpretation, or enforcement of this Agreement.

Co-Pack Agreement ¶ 25 (emphasis added). The use of the definite article "the" establishes that the forum-selection clause is mandatory, and that the state district court in Clay County, Minnesota is the exclusive forum for adjudicating all disputes related to the Co-Pack Agreement. Therefore, dismissal under Rule 12(b)(6) is warranted. See Rainforest Cafe, Inc. v. EklecCo, L.L.C., 340 F.3d 544, 547 (8th Cir. 2003) (affirming dismissal of case based on mandatory forum-selection clause that required disputes to be brought in state forum); see also Atl. Marine, 134 S. Ct. at 583 n.8 (stating that when a "plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause," dismissal "would work no injustice on the plaintiff").

**B. Motions Related to Default**

The partes' motions pertaining to default are mooted by the Court's dismissal of this action. Additionally, the Court declines United Sugars' request for an award of attorney's fees for the costs incurred in filing the default judgment motion and responding to Defendants' motion to set aside the default. Opp'n Defs.' Mot. Set Aside Entry Default [Docket No. 36] at 5-10. Although Defendants' counsel could have been more forthcoming about the factual bases for the motion to set aside the default, United Sugars does not argue that it would have refrained from bringing the motion for default judgment had it known why Defendants defaulted and what defenses they intended to raise. To the contrary, now that it knows of Defendants' defenses, United Sugars argues that it is entitled to default judgment because the defenses are not meritorious. See id. at 5-10. Thus, had United Sugars known earlier of the reason for the default and the defenses to be asserted by Defendants, it likely would still have moved for default

13

judgment and opposed Defendants' motion to set aside the default.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Tropical Worldwide Corp., Commercial Long Trading, and United Packaging Corp.'s Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative for Improper Venue [Docket No. 19] is **GRANTED**;

2. Defendants Tropical Worldwide Corp., Commercial Long Trading, and United Packaging Corp.'s Motion to Set Aside Default [Docket No. 25] is **DENIED** as moot; and

3. Plaintiff United Sugars Corporation's Motion for Default Judgment [Docket No. 13] is **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

              BY THE COURT:


                  s/Ann D. Montgomery
              ANN D. MONTGOMERY
              U.S. DISTRICT JUDGE

Dated:  May 9, 2014.